UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSHUA BRAGDON,
    *Plaintiff*,

v.

BACCUS *et al.*,
    *Defendants*.

No. 3:20-cv-258 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Joshua Bragdon is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed this lawsuit *pro se* and *in forma pauperis* against several DOC officials, principally alleging he was assaulted, strip-searched, and placed in restraints in violation of his constitutional rights. In accordance with my initial review of the complaint under 28 U.S.C. § 1915A, I will allow some of Bragdon's claims to proceed.

**BACKGROUND**

Bragdon's claims arise from his confinement as a sentenced prisoner at Cheshire Correctional Institution. His complaint names the following defendants: Correctional Officer Baccus, Correctional Officer Wauthier, Lieutentant Saas, and Lieutenant Durant. Doc. #1. The following facts are derived from the allegations in Bragdon's complaint and are accepted as true only for purposes of this ruling.

On December 12, 2019, Correctional Officer Baccus entered Bragdon's cell to tell Bragdon's cellmate that the cellmate would be transferred to another housing unit. *Id.* at 4 (¶¶ 12-13). While Bragdon was sitting in his cell with his back to the door, he heard Correctional Officer Wauthier yell, "Spit it." *Id.* at 4-5 (¶ 15). Wauthier then wrapped his hands around

1

Bragdon's throat and slammed him to the ground. *Ibid.* Bragdon's head collided with the steel frame of the bunk. *Ibid.* While continuing to choke Bragdon and yelling "spit it out," Wauthier removed one hand from Bragdon's throat. *Ibid.* He kept pinning Bragdon down with his body weight, covering Bragdon's mouth with his free hand and using his other hand to choke Bragdon. *Ibid.* He slammed Bragdon's head into the cement, while he yelled repeatedly for Bragdon to "spit it the fuck out." *Ibid.* But Bragdon did not have anything in his mouth, and with Wauthier's hands around his neck and covering his mouth, it was "impossible" for Bragdon to breathe. *Ibid.*

Baccus called a "Code Orange" after watching Wauthier assault Bragdon without making any attempt to stop him. *Id.* at 5 (¶ 16); *see also id.* at 5-6 (¶ 17). Lieutenants Saas and Durant entered Bragdon's cell with other correctional officers. *Id.* at 5 (¶ 16). Bragdon was then handcuffed and escorted to the Restrictive Housing Unit ("RHU"). *Ibid.*

In the RHU, Bragdon was placed in a cell, where he had his clothing forcefully removed and was strip-searched under the supervision of Saas and Durant. *Id.* at 6 (¶ 18). While still under their supervision, Bragdon was put on in-cell restraints with extremely tight ankle and hand cuffs. *Id.* at 6 (¶ 19). The cuffs caused irritation and swelling on Bragdon's wrists and ankles. *Ibid.* When Bragdon was placed in a "drycell," the medical staff ordered that the cuffs be loosened because they were "way to[o] tight." *Ibid.*

Bragdon was placed in a drycell so that Saas could monitor his feces to determine if he had swallowed anything. *Id.* at 6 (¶ 20). But Saas found nothing in Bragdon's feces, and Bragdon's drug tests returned negative results. *Ibid.*

Sometime later, Bragdon was treated by medical staff for neck and head injuries sustained during Wauthier's assault. *Id.* at 7 (¶ 21). The medical staff was concerned about re-injury to the pre-existing titanium plate in Bragdon's face. *Id.* at 7 (¶ 22).

Saas and Durant refused to permit Bragdon to contact the Connecticut State Police to press charges against his assaulters. *Id.* at 7 (¶ 23). Bragdon learned from other supervisors that he could write to a state trooper, and he did so but received no response. *Ibid.*

Bragdon's complaint names the defendants in their official and individual capacities. It seeks money damages, a declaration that defendants violated his rights, and injunctive relief in the form of an order requiring all defendants to adhere to the Administrative Directives concerning use of physical force. *See id*. at 12.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may

3

not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment excessive force and state law assault*

The Eighth Amendment protects prisoners from "cruel and unusual punishments." U.S. CONST. amend. VIII. "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations and citations omitted). In order to state an Eighth Amendment claim for the use of such excessive force, an inmate must allege two elements: (1) a sufficiently serious use of force (the objective element) (2) that has been inflicted for malicious or sadistic reasons rather than in a good-faith effort to maintain or restore discipline (the subjective element). *See Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016) (*per curiam*). Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

Bragdon has plainly alleged enough facts for initial review purposes to sustain a claim for Eighth Amendment excessive force against Wauthier. His complaint also sufficiently states an excessive force claim against Baccus for failure to intervene, because it alleges that Baccus was present during Wauthier's alleged attack but did not stop it. On the other hand, the complaint does not allege sufficient facts to suggest that Saas and Durant were in a position to intervene to stop the attack; instead, it alleges facts suggesting that Wauthier's attack was over when they arrived at Bragdon's cell. *See* Doc. #1 at 5 (¶ 16). Accordingly, I will allow Bragdon's Eighth Amendment excessive force claim as well as his cognate state law assault claim to proceed

against Wauthier and Baccus but I will dismiss the claims without prejudice as to Saas and Durant.

As to Bragdon's claim about cuffs on his hands and ankles, he alleges that they were placed on him "extremely tight under the supervision of Lt. Saas and Lt. Durant" and that the restraints "caused irritation and swelling" on his wrist and ankles. *Id*. at 6 (¶ 19). These allegations of some "irritation and swelling," without any suggestion of significant pain or that the injury was more than *de minimis*, fall short of showing that there was an objectively serious use of force as required to sustain an Eighth Amendment claim. *See, e.g.*, *Garcia v. Semple*, 2019 WL 5597771, at *11 (D. Conn. 2019); *Burroughs v. Petrone,* 138 F. Supp. 3d 182, 213 (N.D.N.Y. 2015).

Nor does Bragdon allege adequate facts—as distinct from conclusions—to plausibly show that Saas and Durant knew that the cuffs had been placed on too tightly (*i.e.*, that they instructed officers to place the restraints on too tightly or that Bragdon told them the cuffs were too tight). *Cf. Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019) (plaintiff alleging an excessive force claim under the Fourth Amendment on the basis of excessively tight handcuffs must show "either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both"). Accordingly, I will dismiss without prejudice Bragdon's claims against Saas and Durant stemming from the use of cuffs on his hands and ankles.

### *Fourth Amendment strip search*

I also liberally construe Bragdon's complaint as alleging a Fourth Amendment claim. *See* Doc. #1 at 6 (¶ 18). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

CONST. amend. IV. In the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris*, 818 F.3d at 58 n. 2. The following four factors should be considered to decide if a prison search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 63 (citing *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

Bragdon alleges that he was taken to RHU where he was "forcefully stripped of his clothing under the supervision" of Saas and Durant and where his feces and urine were later searched by Saas. Doc. #1 at 6 (¶¶ 18-20). In light of Bragdon's allegations that he did nothing wrong and that there was no basis to suspect him of doing something wrong, his allegations suffice for present purposes to establish that Saas and Durant subjected him to an unreasonable search in violation of the Fourth Amendment.

### *Denial of right to contact state police*

Bragdon alleges that Saas and Durant denied his request for him to contact the Connecticut State Police to press charges for him being assaulted, but he admits that he later wrote a letter to a state trooper. *Id*. at 7 (¶ 23). Accordingly, even assuming that Bragdon had a constitutional right to contact the State Police, he has not shown that he was ultimately denied this right. Accordingly, I will dismiss any claim with respect to denial of any right to contact the Connecticut State Police.

*Claims for declaratory and injunctive relief*

Bragdon seeks declaratory relief as well as an injunction to require that defendants obey DOC administrative directives concerning the use of physical force. But because Bragdon has yet to substantiate the merits of his claims and does not allege that he is subject to an ongoing violation of his rights or that he is likely to be subject again to the use of excessive force by any of the defendants, there is no basis at this time to consider his requests for declaratory or injunctive relief. *See City of Los Angeles v. Lyons*, 461 US. 95, 105-06 (1983); *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004); *Vaughan v. Aldi*, 2019 WL 6467550, at *3 (D. Conn. 2019).

*Official capacity claims*

Because all defendants work for the DOC, they are immune from money damages suits in their official capacities. *Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)). Accordingly, I will dismiss all official-capacity claims for money damages.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Bragdon's Eighth Amendment excessive force and state law assault-and-battery claims may proceed against defendants Wauthier and Baccus in their individual capacities for money damages. Bragdon's Fourth Amendment strip-search claim may proceed against defendants Saas and Durant in their individual capacities for money damages. All other claims and defendants in this action are DISMISSED, subject to Bragdon's filing of an amended complaint within 21 days if he is able to allege additional facts to cure the deficiencies identified in this ruling.

(2) The Clerk of Court shall verify the current work addresses for Wauthier, Baccus, Saas, and Durant with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Doc. #1) to those defendants in their individual

capacities at the confirmed addresses within **twenty-one (21)** days of this order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35)** day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) All defendants shall file their response to the complaint, either an answer or motion to dismiss within **sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** of this order. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21)** days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Bragdon changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Bragdon must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Bragdon has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Bragdon should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 4th day of May 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge